UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                                                            :
BISON CAPITAL CORPORATION,                                  :    10 CV 714 (SHS) (AJP)
                                                            :
                              Plaintiff,                    :    ECF CASE
                                                            :
             -against-                                      :
                                                            :
ATP OIL & GAS CORPORATION,                                  :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X


### DEFENDANT ATP OIL & GAS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS III THROUGH XIII OF THE AMENDED COMPLAINT

Gerald G. Paul, Esq.
Lissa C. Gipson, Esq.
FLEMMING ZULACK
  WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York  10006
Tel: (212) 412-9500

-and-

Edward J. Murphy, Esq.
Brit T. Brown, Esq.
Benjamin A. Escobar, Jr., Esq.
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Tel:  (713) 623-0887

*Attorneys for Defendant*
*ATP Oil & Gas Corporation*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT FACTS ...............................................................................................................2

    The Agreement..................................................................................................................2

    The Transactions Subject To This Motion..........................................................................5

ARGUMENT .......................................................................................................................5

    COUNTS III THROUGH XIII SHOULD BE
    DISMISSED AS A MATTER OF LAW ................................................................................5

    I.     The Term Provision Of The Agreement Alone
           Precludes The Claims In Counts III through XIII .............................................6

    II.    To Earn A Fee Under Paragraph 2(b), Plaintiff Was
           Required To Render A Service, That Is, Advise
           And Assist ATP In Structuring And Negotiating
           The Relevant Transaction, Which Plaintiff
           Concedes It Did Not Do With Respect To The
           Transactions Alleged In Counts III Through XIII ...............................................10

REQUESTED RELIEF...........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

<u>**Federal**</u>

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,*
    404 F.3d 566 (2d Cir. 2005) ................................................................................... 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2007)..................................................................... 6

*Chapman v. New York State Div. for Youth,*
    546 F.3d 230 (2d Cir. 2008) ................................................................................... 7

*Cortec Indus., Inc. v. Sum Holding, L.P.,*
    949 F.2d 42 (2d Cir. 1991) ..................................................................................... 6

*Crowley v. VisionMaker, LLC,*
    512 F. Supp. 2d 144 (S.D.N.Y. 2007) .................................................................... 7

*Galli v. Metz,*
    973 F.2d 145 (2d Cir. 1992) ............................................................................. 9, 11

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007),
    *rev'd on other grounds, Ashcroft v. Iqbal,* 556 U.S. ___, 129 S. Ct. 1937 (2009).................... 6

*Kimball Assocs., P.A. v. Homer Cent. Sch. Dist.,*
    No. 00-CV-897 (HGM)(GJD), 2000 WL 1720751 (N.D.N.Y. Nov. 9, 2000) ..................... 9, 10

*Newton v. City of New York,*
    566 F. Supp. 2d 256 (S.D.N.Y 2008) ................................................................. 5, 6

*Padilla v. Maersk Line, Ltd.,*
    636 F. Supp. 2d 256 (S.D.N.Y. 2009) ................................................................. 7, 9

*Peter J. Solomon Co. v. Oneida, Ltd.,*
    No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) ......................... 9

*Samba Enters., LLC v. iMesh, Inc.,*
    No. 06 Civ. 7660 (DC), 2009 WL 705537 (S.D.N.Y. Mar. 19, 2009) ......................... 9

# TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                                          **Page(s)**

*Seiden Assocs. v. ANC Holdings, Inc.,*
  959 F.2d 425 (2d Cir. 1992) ...................................................................... 7

*Sel-Leb Mktg., Inc. v. Dial Corp.,*
  No. 01 CIV. 9250 (SHS), 2002 WL 1974056 (S.D.N.Y. Aug. 27, 2002) .................................. 6

*In re September 11 Litig.,*
  640 F. Supp. 2d 323 (S.D.N.Y. 2009) ................................................ 7

*Verzani v. Costco Wholesale Corp.,*
  641 F. Supp. 2d 291 (S.D.N.Y. 2009) .............................................. 6, 7

*Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.,*
  111 F. Supp. 2d 450 (S.D.N.Y. 2000) ............................................. 7

*Wurtsbaugh v. Banc of America Sec. LLC,*
  No. 05 CIV. 6220(DLC), 2006 WL 1683416 (S.D.N.Y. June 20, 2006) ................................... 7

## State

*Greenfield v. Philles Records,*
  98 N.Y.2d 562, 750 N.Y.S2d 565 (2002) ........................................... 7

*Phoenix Capital Invs. LLC v. Ellington Mgmt. Group, LLC,*
  51 A.D.3d 549, 859 N.Y.S.2d 46 (1st Dep't 2008) ................................. 9

Defendant ATP Oil & Gas Corporation ("ATP") submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts III through XIII of Plaintiff's Amended Complaint on the ground that the Amended Complaint fails to state a claim upon which relief can be granted.[1]

## PRELIMINARY STATEMENT

Plaintiff's 91-page Amended Complaint cannot obscure what is simply an alleged breach of contract action governed by clear and unambiguous provisions of a letter agreement entered into by Plaintiff Bison Capital Corporation ("Bison" or "plaintiff") and ATP (collectively, the "Parties") dated February 1, 2004 (the "Agreement").[2]  Under the Agreement, Bison agreed to act as an independent contractor to advise and assist ATP in structuring and negotiating terms of a financing transaction or transactions to meet ATP's immediate financing needs.  The Agreement itself expressly provided that it "shall terminate" "on April 1, 2004" (the "termination date").  The Agreement additionally contained what is known as a "tail" provision that allowed Bison to earn a fee based on a percentage of the value of a financing transaction if ATP consummated or entered into the transaction within the 12 months following the termination date (*i.e.*, by April 1, 2005 (the "expiration date")), *provided* that Bison advised and assisted ATP in negotiating and structuring the transaction that was consummated before the Agreement expired on April 1, 2005.  ATP, as anticipated, entered into and consummated such a financing arrangement with Credit Suisse First Boston ("CSFB") within the 12-month "tail" period before

---

[1]    ATP has not yet filed an answer and, as permitted by Rule 12(a), will file its answer after the Court issues its ruling on this motion to dismiss.

[2]    A copy of the Amended Complaint ("Am. Compl.") as well as the Agreement, which was Ex. 2 to the Am. Compl., are annexed as Exhibit A to the accompanying Declaration of Gerald G. Paul ("Paul Decl."). Because the remaining exhibits to the Am. Compl. are voluminous and irrelevant to this motion, they are omitted.

the expiration date and paid plaintiff over $1.85 million for its services in connection with that transaction.

Plaintiff now files this action one day before the expiration of the statute of limitations claiming for the first time that ATP purportedly owes plaintiff over one hundred million dollars in additional fees, including alleged "prejudgment interest," on every single subsequent transaction that ATP entered into with CSFB over the past six years. Plaintiff, however, concedes it did not assist ATP in structuring or negotiating the terms of *any* of ATP's subsequent transactions – in fact, Bison does not even claim to have been aware of the existence of ATP's other transactions at the time they were negotiated. (Plaintiff's information about these transactions that form the basis of its one hundred million dollar-plus claim apparently comes from ATP's public filings, which plaintiff attaches to the Amended Complaint.)

Additionally, all of the transactions contained in Counts III through XIII of the Amended Complaint, on the face the allegations alone, occurred not only after the termination date on April 1, 2004, but after the 12-month "tail" period and, therefore, after the Agreement expired on April 1, 2005. Plaintiff cannot point to any provision in the Agreement that could permit this Court to ignore the express term and expiration of this limited services Agreement to impose on ATP a purported "continuing" and perpetual duty to pay plaintiff a percentage of the value of every financing transaction it enters into with CSFB for the life of the company. Such a result would be absurd, not to mention contrary to the plain meaning of the Agreement. Accordingly, Counts III through XIII should be dismissed as a matter of law.

## RELEVANT FACTS

### The Agreement

The Agreement expressly identified: the services that Bison was to provide, in Paragraph 1; the compensation Bison would receive for its services, in Paragraph 2; and the date after

which Bison would no longer be entitled to a fee for the services it provided during the term of the Agreement, in Paragraph 7.   Bison agreed to provide two types of services – one in connection with a Capital Transaction and another in connection with a Transaction. (Agreement, Ex. A to Paul Decl. at Ex. 2, p. 1, ¶¶ 1(a) & (b).)  Only services related to a Capital Transaction are at issue in this lawsuit, which the Parties described in Paragraph 1 of the Agreement as follows:

> Services to be Rendered.  ATP hereby engages Bison under the leadership of its President Edwin E. Wells, Jr., as its financial advisor for the purposes of:
>
> (a) *advising* the Company [ATP] with respect to potential financing alternatives *and assisting* the company structuring and negotiating the terms of potential financing arrangements ("Capital Transactions");

(*Id.* at p. 1, ¶ 1(a) (emphasis added).)  Thus, Bison unambiguously agreed to provide services that consisted of advising and assisting ATP in structuring and negotiating the actual terms of any financing deal for which it seeks compensation.

Because of its short two-month term (February 1 – April 1, 2004), the Agreement included a 12-month post-termination window or "tail" for calculating fees if services Bison provided during the term of the Agreement resulted in ATP entering and closing a financing arrangement during that additional 12-month "tail".  The time period for calculating Bison's fee was set forth in Paragraph 7, which states in relevant part as follows:

> Term.  This Agreement shall commence on the date hereof and shall terminate, unless extended by Bison and the Company, on April 1, 2004, *provided, however*, that either party may terminate the Agreement without cause upon receipt of ten business days' prior written notice to the other party to that effect. Notwithstanding the foregoing, Bison shall be entitled to the fees set forth in Paragraph 2 above in the event the Company consummates or enters into an agreement or arrangement providing for a Capital Transaction or Transaction at any time within the twelve months following termination of this Agreement; and no

> termination of Bison's engagement hereunder shall affect the
> Company's obligation to pay fees and expenses to the extent
> provided for herein and to indemnify Bison as provided in the
> Indemnification Agreement.    The provisions of Paragraphs 3
> through 8 shall survive any termination of this Agreement.

(*Id.* at pp. 4-5, ¶ 7.)  The Parties did not extend the Agreement nor did they terminate it before

April 1, 2004.  Consequently, it terminated on April 1, 2004, as provided in the Agreement, and

the 12-month post-termination or "tail" period during which Bison could earn fees expired on

April 1, 2005.

Bison agreed that its compensation would be tied to the services described in the

"Services to be Rendered" section quoted above in Paragraph 1 of the Agreement.  (*See id.* at p.

1, ¶ 1 ("ATP hereby *engages* Bison . . . for the purpose of . . . advising . . . assisting," etc.).)

Specifically, the Parties confirmed this agreement in the "Compensation" paragraph, Paragraph 2

of the Agreement, immediately following the "Services to be Rendered" provision, which states

as follows:

> Compensation.  *In connection with this engagement*, ATP shall pay
> to Bison:
>
> (a) monthly advisory fees of $25,000 per month paid in cash on or
> prior to the 20th calendar day of each month during the term of this
> agreement; and
>
> (b) for each Capital Transaction through which funds are made
> available to or for the benefit of ATP, its affiliates or lenders as a
> result of arrangements made or to be made by investment or
> commercial banking firms approached by Bison on behalf of ATP,
> as listed in Exhibit A and additional entities may be added to such
> Exhibit after the date hereof with the consent of the Company, cash
> fees equal to one per cent (1%) of the aggregate Value of such
> funds, such fees in each case to be paid on the date such funds are
> made available, provided, however, for funds made available
> through the sale, exchange or placement of equity securities, such
> fees shall be equal to one and one quarter percent (1.25%) of the
> aggregate Value of such funds;

(*Id.* at p. 1, ¶ 2 (emphasis added).)  Accordingly, if Bison provided services during the term of the Agreement that resulted in a financing transaction that closed and funded within 12 months of the termination date, Bison would earn a fee.  During the 12-month "tail" period, ATP did consummate a financing arrangement and Bison concedes that it was paid in full the $1.85 million it was owed in connection with its services related to that transaction.  (*See, e.g.*, Am. Compl., Ex. A to Paul Decl., ¶¶ 27, 137.)  Bison, likewise, does not dispute that it was paid all the "monthly advisory fees of $25,000" that were to be paid to it "during the term of this agreement," as provided in Paragraph 2(a).  (*See id.* at ¶ 137.)

### *The Transactions Subject To This Motion*

The claims pertaining to Counts III through XIII all are based on ATP's subsequent transactions – *i.e.*, transactions entered into after the expiration of the Agreement.  Plaintiff concedes that: (1) each of these transactions closed and funded after April 1, 2005, the last day of the Agreement's post-termination or "tail" period; and (2) Bison did *not* advise and assist ATP in negotiating and structuring these transactions – *i.e.*, Bison does not allege that it provided the services it was required to render under Paragraph 1 of the Agreement.

Rather than set forth each of these post-expiration transactions in detail, ATP refers the Court to the dates set forth in the Amended Complaint.  (*See* Am. Compl., Ex. A to Paul Decl., ¶¶ 319-73.)  All of these transactions post-date April 1, 2005.

### ARGUMENT

### COUNTS III THROUGH XIII SHOULD BE DISMISSED AS A MATTER OF LAW

While a complaint need not provide "detailed factual allegations," it must "amplify a claim with some factual allegations ... to render the claim plausible" in order to survive a motion to dismiss under Rule 12(b)(6).  *Newton v. City of New York*, 566 F. Supp. 2d 256, 269 (S.D.N.Y

2008) (citing and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) and *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *rev'd on other grounds, Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009)).  The test is no longer whether there is "no set of facts [that plaintiff could prove] which would entitle him to relief." *Newton*, 566 F. Supp. 2d at 269 (internal quotation omitted).   Rather, it is a "context-specific task" that requires the complaint to provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"   *Id.* (internal quotation omitted); *see also Ashcroft*, 129 S. Ct. at 1949, 1950 ("[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Where, as here, all of plaintiff's claims are based on alleged breaches of contract, the contract itself is properly considered as a basis for defendant's 12(b)(6) motion.  *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 298-99 (S.D.N.Y. 2009); *Sel-Leb Mktg., Inc. v. Dial Corp.*, No. 01 CIV. 9250 (SHS), 2002 WL 1974056, at *3 (S.D.N.Y. Aug. 27, 2002) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir. 1991).  The Parties have agreed that "[a]ll aspects of the relationship created by this Agreement shall be governed by and construed in accordance with the laws of the State of New York."  (Agreement, Ex. A to Paul Decl. at Ex. 2, p. 5, ¶ 10.)

As we now demonstrate, there is no plausible foundation for Counts III through XIII because plaintiff's allegations concede that all of the transactions that form the basis of Counts III through XIII occurred *after* the expiration of the Agreement (Point I) and, in any event, plaintiff provided no services in connection with these transactions (Point II).

**I.    The Term Provision Of The Agreement Alone
Precludes The Claims In Counts III Through XIII.**

In interpreting a contract, courts seek to enforce the intent of the parties.  *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008).  "The best evidence of what parties to a written agreement intend is what they say in their writing."  *In re September 11 Litig.*, 640 F. Supp. 2d 323, 332 (S.D.N.Y. 2009) (quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569, 750 N.Y.S2d 565 (2002)).  Accordingly, "[u]nder New York law, the goal of contract interpretation is to honor the intent of the parties 'as revealed by the *language* they chose to use.'"  *Verzani*, 641 F. Supp. 2d at 299 (quoting *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

Courts regularly grant Rule 12(b)(6) motions based on the unambiguous language of contracts.  *See, e.g.*, *Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 153 (S.D.N.Y. 2007) (granting Rule 12(b)(6) motion denying plaintiff advisory fee based on unambiguous contract language); *Wurtsbaugh v. Banc of America Sec. LLC*, No. 05 CIV. 6220 (DLC), 2006 WL 1683416, at *5 (S.D.N.Y. June 20, 2006) (breach of contract claim may be properly dismissed on Rule 12(b)(6) motion).[3]  "[A] contract's language is not ambiguous simply because the parties urge different interpretations, or if one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'"  *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 260 n.1 (S.D.N.Y. 2009) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir. 2005)).

The Agreement here was a limited services engagement with a two-month term expressly provided in the Agreement – from February 1, 2004, the date of the Agreement, through its

---

[3]    *See also Verzani*, 641 F. Supp. 2d at 298-300 (granting Rule 12(b)(6) motion based on contract language); *Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 455-57 (S.D.N.Y. 2000) (same).

termination "on April 1, 2004" – "unless extended by Bison and the Company" or terminated by either party by prior written notice.[4] The Parties neither extended the Agreement nor terminated it during the term and Bison does not allege otherwise. The Agreement, therefore, terminated on April 1, 2004, the termination date, as provided in the Agreement. Bison was to provide a service of advising and assisting ATP in negotiating and structuring a financing transaction or transactions (Agreement, Ex. A to Paul Decl. at Ex. 2, p. 1, ¶ 1(a))[5] and Paragraph 2(a) provided that "[i]n connection with this engagement, ATP shall pay to Bison" "monthly advisory fees of $25,000 per month . . . during the term of this agreement." (*Id.* at ¶ 2(a).) Tellingly, plaintiff does not allege that any additional monthly advisory fees are owed to it.

The Agreement further provided for an additional 12-month "tail" after the termination date so that Bison could receive the compensation described in Paragraph 2 of the Agreement "in the event the Company consummates or enters into an agreement providing for a Capital Transaction or Transaction at any time within twelve months following termination of this Agreement." (*Id.* at pp. 4-5, ¶ 7.) The clear and unambiguous language of the Agreement itself provides that the cut-off for Bison to receive compensation under Paragraph 2 can be no later than the 12-month tail after the termination date, *i.e.,* not later than April 1, 2005, the expiration date. Accordingly, because Counts III through XIII on their face all allege events and transactions that occurred after the April 1, 2005 expiration date (*see* Am. Compl., Ex. A to Paul Decl., ¶¶ 319-73), they are properly dismissed based on the term of the Agreement, even taking

---

[4]    "Term. This Agreement shall commence on the date hereof and shall terminate, unless extended by Bison and the Company, on April 1, 2004, *provided, however,* that either party may terminate the Agreement without cause upon receipt of ten business days' prior written notice to the other party to that effect." (Agreement, Ex. A to Paul Decl. at Ex. 2, p. 4, ¶ 7.)

[5]    It is also undisputed that the Agreement did not limit ATP's right – either during or after the term of the Agreement – to work independently or with advisors other than Bison, and thus, it was not an exclusive engagement.

into account the extra "tail" provision contained in Paragraph 7. *See, e.g., Peter J. Solomon Co. v. Oneida, Ltd.*, No. 09 Civ. 2229 (DC), 2010 WL 234827, at *4 (S.D.N.Y. Jan. 22, 2010) (construing financial services agreement with similar tail provision); *Phoenix Capital Invs. LLC v. Ellington Mgmt. Group, LLC*, 51 A.D.3d 549, 549-550, 859 N.Y.S.2d 46, 48 (1st Dep't 2008) (dismissing plaintiff investment broker's breach of contract claim for fee based on its securing investment transaction for defendant as "nonviable" because investment transaction did not occur within "one-year tail period"). For this reason alone, ATP's motion should be granted.

Furthermore, plaintiff's bald allegation that its right to compensation under the Agreement is purportedly without any temporal limit and continues indefinitely into the future must be rejected as simply contrary to any reasonable reading of the Agreement's language. *See Padilla*, 636 F. Supp. 2d at 260 n.1. Courts construe the contract to give full effect to all of the contract's provisions, favoring an interpretation that gives reasonable and effective meaning to all terms of the contract over one that leaves a part unreasonable or of no effect. *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992). Courts "should not interpret a contract such that the result would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'" *Peter J. Solomon Co.*, 2010 WL 234827, at *4 (quoting *Samba Enters., LLC v. iMesh, Inc.*, No. 06 Civ. 7660 (DC), 2009 WL 705537 (S.D.N.Y. Mar. 19, 2009) (internal quotation omitted)). No reasonable manager would agree to pay unknown sums in compensation to a financial advisor simply because he or she assisted in a single transaction. *See id.* ("If the parties had actually intended that [plaintiff financial advisor] would receive a transaction fee for any and all transactions that were consummated . . . they surely would have so provided explicitly."); *Kimball Assocs., P.A. v. Homer Cent. Sch. Dist.*, No. 00-CV-897 (HGM)(GJD), 2000 WL

1720751, at *3, 5 (N.D.N.Y. Nov. 9, 2000) (finding services contract limited in scope based on contract language alone even where "contract lack[ed] a specific provision regarding duration").

Moreover, plaintiff does not even allege that it demanded payment from ATP for any of the purported transactions described in Counts III through XIII, all of which took place after the expiration date of the Agreement.  Likewise, plaintiff did not demand – and, tellingly, is not even including as a part of its claims in this action – any of the "monthly advisory fees of $25,000," thus acknowledging that they were not owed beyond the limited term of Agreement.  Plaintiff, therefore, has implicitly conceded that the Agreement expired long ago and plaintiff cannot be heard to argue that ATP has a purported "continuing" obligation to pay it in perpetuity given the express language of the Agreement to the contrary.

Accordingly, the analysis properly ends here and this Court should grant ATP's motion dismissing Counts III through XIII.

**II.    To Earn A Fee Under Paragraph 2(b), Plaintiff Was Required To Render A Service, That Is, Advise And Assist ATP In Structuring And Negotiating The Relevant Transaction, Which Plaintiff Concedes It <u>Did Not Do With Respect To The Transactions Alleged In Counts III Through XIII.</u>**

It is well-settled under New York law that to make out a *prima facie* claim for breach of contract, plaintiff must allege that it performed the services it owed under the Agreement.  *See, e.g., Kimball Assocs.*, 2000 WL 1720751, at *3.  Plaintiff in its Amended Complaint repeatedly concedes that it provided no services – let alone the particular services required and specified in the Agreement – with respect to any of the transactions described in Counts III through XIII, thus providing an independent basis for this Court to dismiss these Counts as a matter of law.

The plain language of the Agreement demonstrates that the Agreement was a contract for services.  Specifically, Paragraph 1 of the Agreement, titled "Services to be Rendered," expressly provides that "ATP hereby engages Bison . . . as its financial advisor for the purpose of . . .

advising the Company with respect to potential financing alternatives and assisting the Company in structuring and negotiating the terms of potential financial arrangements ('Capital Transactions')." (Agreement, Ex. A to Paul Decl. at Ex. 2, p. 1, ¶ 1(a).) Thus, the plain language makes clear that these services Bison was to be providing to ATP were with respect to particular transactions, *i.e.,* "advising" and "assisting" ATP in "structuring and negotiating" the actual terms of a particular transaction.  Bison agreed to provide these services, and if the services were rendered with respect to a financing transaction that was consummated within the 12-month tail (described above in Point I), then plaintiff would be entitled to a percentage of the value of that particular transaction pursuant to Paragraph 2(b).  Even the method by which Bison's compensation was to be calculated further demonstrates that it was to be paid when it provided a successful service in connection with a particular transaction, as the fee itself depended on the type and value of transaction actually consummated.[6]

Moreover, the entire Agreement makes clear that Bison was to provide a service and earn compensation under Paragraph 2(b) *only* on transactions which it actually advised and assisted ATP in negotiating and structuring. *See Galli*, 973 F.2d at 149 (contracts should be interpreted to favor interpretation that gives reasonable and effective meaning to all terms of contract).  For example, Bison recognized it would provide services on a transaction-by-transaction basis when it reserved the right to advertise its success, if any, in Paragraph 8 of the Agreement "in relation to the Capital Transaction or Transaction."  Specifically, Paragraph 8 provided for advertisements or public announcements "stating that Bison acted as financial advisor to the

---

[6]    Specifically, Bison agreed that "[i]n connection with this engagement ..." it would be compensated for "each Capital Transaction through which funds are made ... available to or for the benefit of ATP ..." (Agreement, Ex. A to Paul Decl. at Ex. 2, pp. 1-2, ¶¶ 2(b) & (c).)

Company in connection with such Capital Transaction or Transaction."[7]  This language again acknowledges the active role that plaintiff was to perform "in connection with" any transaction for which it could seek compensation.  (*See also* Agreement, Ex. A to Paul Decl. at Ex. 2, p. 4, ¶ 6 ("Bison will be advising and assisting the Company in connection with its engagement"); *id.* at p. 3, ¶ 4 ("ATP shall reimburse Bison for all Bison's reasonable expenses incurred in connection with the performance of its engagement hereunder").)  Bison does not even allege that it was aware of the existence of the transactions alleged in Counts III through XIII at the time they were being structured and negotiated and, thereby, concedes that it played no role in those transactions.  Thus, it cannot, as a matter of law, seek compensation with respect to the transactions alleged in Counts III through XIII.

Accordingly, Counts III through XIII should be dismissed based on these additional and independent grounds.

---

[7]    "Public Announcements.  The Company [ATP] acknowledges that Bison at its option and expense, *after announcement of any Capital Transaction or Transaction,* place announcements and advertisements or otherwise publicize *the Capital Transaction or Transaction in such financial and other newspapers and journals as it may choose, stating that Bison acted as financial advisor to the Company in connection with such Capital Transaction or Transaction.*  The Company further consents to Bison's public use or display of the Company's logo, symbol or trademark as part of Bison's general marketing or promotional activities provided such use or display is in the nature of a public record or tombstone announcement *in relation to the Capital Transaction or Transaction.*"  (Agreement, Ex. A to Paul Decl. at Ex. 2, p. 5, ¶ 8 (emphasis added).)

## REQUESTED RELIEF

For all these reasons, Defendant ATP Oil & Gas Corporation respectfully requests that the Court dismiss Counts III through XIII on the grounds that Plaintiff has failed to state a claim upon which relief can be granted and order such other and further relief to which Defendant may be entitled.

Dated:  New York, New York
        March 26, 2010

                                        FLEMMING ZULACK WILLIAMSON
                                        ZAUDERER LLP

                                        By:_____/s/_____

                                              Gerald G. Paul
                                              Lissa C. Gipson
                                        One Liberty Plaza
                                        New York, New York  10006
                                        Tel: (212) 412-9500
                                        Fax: (212) 964-9200
                                        Email: gpaul@fzwz.com
                                        Email: lgipson@fzwz.com

                                        -and-

                                        Edward J. Murphy
                                        Brit T. Brown
                                        Benjamin A. Escobar, Jr.
                                        BEIRNE, MAYNARD & PARSONS, LLP
                                        1300 Post Oak Boulevard, Suite 2500
                                        Houston, Texas 77056
                                        Tel:  (713) 623-0887
                                        Fax:  (713) 960-1527

                                        *Attorneys for Defendant*
                                        *ATP Oil & Gas Corporation*

13