UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
BISON CAPITAL CORPORATION,                                    :   10 CV 714 (SHS) (AJP)
                                                              :
                       Plaintiff,                :   ECF CASE
                                                              :
      -against-                                              :
                                                              :
ATP OIL & GAS CORPORATION,                                    :
                                                              :
                       Defendant.                :
                                                              :
------------------------------------------------------------- X


**DEFENDANT ATP OIL & GAS CORPORATION'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION
TO DISMISS COUNTS III THROUGH XIII OF THE AMENDED COMPLAINT**


Gerald G. Paul, Esq.
Lissa C. Gipson, Esq.
FLEMMING ZULACK
  WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 412-9500

-and-

Edward J. Murphy, Esq.
Brit T. Brown, Esq.
Benjamin A. Escobar, Jr., Esq.
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Tel: (713) 623-0887

*Attorneys for Defendant
ATP Oil & Gas Corporation*

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT.........................................................................................................................2

    I.      The Clear And Unambiguous Term Provision Of Paragraph 7 Of
          The Agreement Requires Dismissal Of Counts III Through XIII ..........................2

          A.     Plaintiff's "Trigger" Theory Is Not Supported By The Words
                Of The Agreement .................................................................................2

          B.     The Case Law Does Not Support Plaintiff's Construction Of The
                Agreement..............................................................................................4

    II.     The Words Of The Agreement Belie Plaintiff's Argument
          That No Services Were Necessary For It To Earn A Fee
          On The Transactions In Counts III Through XIII....................................................6

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases** <span style="float:right">**Page(s)**</span>

*Federal*

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*
    404 F.3d 566 (2d Cir. 2005)......................................................................................4

*Chase Manhattan Bank v. Remington Prods., Inc.*
    865 F. Supp. 194 (S.D.N.Y. 1994) ............................................................................8

*CIBC World Mkts. Corp. v. TechTrader, Inc.*
    183 F. Supp. 2d 605 (S.D.N.Y. 2001)........................................................................8

*Cortec Industries, Inc. v. Sum Holding, L.P.*
    949 F.2d 42 (2d Cir. 1991).........................................................................................1

*Deutsche Bank Sec. Inc. v. Rhodes*
    578 F. Supp. 2d 652 (S.D.N.Y. 2008)........................................................................8

*Galli v. Metz*
    973 F.2d 145 (2d Cir. 1992).......................................................................................9

*In re Oneida, Ltd.*
    400 B.R. 384 (S.D.N.Y. Bankr. 2009) ................................................................... 5-6

*Lazard Freres & Co. v. Crown Sterling Mgmt., Inc.*
    901 F. Supp. 133 (S.D.N.Y. 1995) ............................................................................8

*Mercury Partners LLC v. Pacific Med. Bldgs., L.P.*
    No. 02 Civ. 6005 (HBP), 2007 WL 2197830 (S.D.N.Y. July 31, 2007) ...................8

*Padilla v. Maersk Line, Ltd.*
    636 F. Supp. 2d 260 (S.D.N.Y. 2009)........................................................................4

*PaineWebber Inc. v. Campeau Corp.*
    670 F. Supp. 100 (S.D.N.Y. 1987) ............................................................................8

*Peter J. Solomon Co. v. Oneida, Ltd.*
    No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010)........................4

*Sel-Lab Marketing, Inc. v. Dial Corp.*
    No. 01 CIV. 9250 (SHS), 2002 WL 1974056 (S.D. N.Y. Aug. 27, 2002) .................1

# TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                                          **Page(s)**

*Federal (cont'd)*

*Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.*
   178 F. Supp. 655 (S.D. N.Y. 1959) ............................................................................... 5

*Yak v. Bank Brussells Lambert, BBL (USA)*
   252 F.3d 127 (2d Cir. 2001) ........................................................................................ 1

*State*

*Alexander v. Capital Paint Co.*
   111 A. 140 (Ct. App. Md. 1920) .................................................................................. 5

*Hoover v. Kleer-Pak of N.C., Inc.*
   236 S.E.2d 386 (N.C. Ct. App. 1977) .......................................................................... 5

*Lura v. Multiplex, Inc.*
   129 Cal. App. 3d 410 (Cal. Ct. App. 1982) ................................................................. 5

*Muller Enters., Inc. v. Gerber*
   133 N.W.2d 913 (Neb. 1965) ....................................................................................... 5

*Muller Enters., Inc. v. Samuel Gerber Adver. Agency, Inc.*
   153 N.W.2d 920 (Neb. 1967) ....................................................................................... 5

*Phoenix Capital Invs. LLC v. Ellington Mgmt. Group, LLC*
   51 A.D.3d 549, 859 N.Y.S.2d 46 (1st Dep't 2008) ..................................................... 4

*Phelps v. Shawprint, Inc.*
   103 N.E.2d 687 (Mass. 1952) ...................................................................................... 5

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 1

Defendant ATP Oil & Gas Corporation ("ATP") submits this reply memorandum of law in further support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts III through XIII of Plaintiff's Amended Complaint.[1]

**PRELIMINARY STATEMENT**

The opposing brief ("Opp.") of plaintiff Bison Capital Corporation ("Bison" or "plaintiff") mirrors the Amended Complaint by filling pages with supposed "background" allegations, bolstering the purported credentials and expertise of Bison's president and reciting data extracted from ATP's public filings and/or the internet. Despite plaintiff's attempt to muddy the waters with this wholly irrelevant historical information, this remains a straightforward alleged breach of contract action governed by the express language of the parties' letter agreement (the "Agreement")[2] that even plaintiff contends is "clear and unambiguous." (Opp. at p. 14.) Thus, plaintiff's reams of extrinsic and unsubstantiated allegations have no bearing on this motion to dismiss or, for that matter, this action.[3] Indeed, the

---

[1] A copy of the Amended Complaint ("Am. Compl.") is annexed as Exhibit A to the moving Declaration of Gerald G. Paul ("Paul Decl.").

[2] A copy of the Agreement is Ex. 2 to the Amended Complaint (part of Ex. A to Paul Decl.).

[3] Moreover, although ATP does not believe that any evidence outside the four corners of the Agreement is necessary to interpret its express language, if this Court is inclined to consider any of plaintiff's extrinsic allegations and materials on this motion, it should also consider plaintiff's allegation that when it learned of the existence of the transaction identified in Count I (the transaction immediately following the invoiced transaction for which plaintiff was paid), Bison requested a fee from ATP (*see, e.g.,* Am. Compl. at p. 41, ¶ 152; Opp. at p. 11). Plaintiff's request took the form of an October 15, 2004 letter ("Request Letter") to ATP regarding the Agreement. This Court may properly consider the Request Letter on this Rule 12(b)(6) motion as part of the pleadings since it was an integral part of plaintiff's own allegations in its Amended Complaint and plaintiff, its author, certainly had "possession or knowledge" of it (*see Sel-Lab Marketing, Inc. v. Dial Corp.*, No. 01 CIV. 9250 (SHS), 2002 WL 1974056, at *3 (S.D. N.Y. Aug. 27, 2002) (citing *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)); and even if plaintiff carefully avoided including the document among its dozens of exhibits, that does not

Agreement's merger clause alone mandates that these allegations be disregarded.[4]

We showed in ATP's moving brief ("Mov. Brf.") that the plain language of Paragraph 7 of the Agreement warrants dismissal of Counts III through XIII, which plaintiff admits involve transactions that were consummated after the termination date and the "tail" period of the Agreement and with which plaintiff concedes it had no involvement. Plaintiff offers nothing in the Agreement or the case law that can alter this conclusion.

## ARGUMENT

I.  **The Clear And Unambiguous Term Provision Of Paragraph 7 Of The Agreement Requires Dismissal Of Counts III Through XIII**

   A.  **Plaintiff's "Trigger" Theory Is Not Supported By The Words Of The Agreement**

Plaintiff concedes, as it must, that the "Term" provision in Paragraph 7 of the Agreement provides a termination date of April 1, 2004, and further provides that "Bison shall be entitled to the fees . . . in the event the Company consummates or enters into an agreement or arrangement providing for a Capital Transaction . . . within twelve months following termination of this Agreement [April 1, 2005]." Attempting to avoid this express provision, which fixes an exact

---

make it any less integral to the complaint. *Id.* (citing *Yak v. Bank Brussells Lambert, BBL (USA)*, 252 F.3d 127, 131 (2d Cir. 2001)).

  In the Request Letter, Bison's president expressly recognized that Bison could only be entitled to a fee if the particular transaction was consummated *prior to April 1, 2005*:

> As noted above, the Engagement Agreement – and, in particular, Paragraphs 2 and 7 thereof – recognizes the substantial value provided by Bison in this situation by providing that, since ATP's new financial arrangements [the Count I transaction] were made by CSFB **prior to April 1, 2005**, Bison is entitled to be paid by ATP the additional 1% fee that is referred to in the enclosed invoice. (Request Letter, attached to the Reply Declaration of Gerald G. Paul as Exhibit A at p. 4 (emphasis added).)

Indeed, Bison's president expressly interpreted the contract that he signed to *limit* compensation to transactions that were "within the applicable time frame," i.e., "prior to April 1, 2005." *Id.* This is exactly the opposite of the theories plaintiff urges in opposing ATP's motion to dismiss.

[4]  *See* Agreement at ¶10, p. 5 ("This Agreement . . . contain[s] the entire agreement of the parties with respect to the subject matter hereof and supercede[s] and take[s] precedence over all prior agreements or understandings, either oral or written, between Bison and the Company and may not be amended or modified except in a writing executed by the parties hereto.").

2

time period during which it can be entitled to a fee, plaintiff offers a novel "trigger" theory, which turns the provision on its head. Plaintiff contends that the time period contained in Paragraph 7 merely establishes a "triggering event." Plaintiff argues that so long as a Capital Transaction was entered into *prior* to April 1, 2005 (the end of the 12-month "tail" period), Bison would be entitled to perpetual compensation concerning any and all subsequent transactions. (Opp. at p. 19.) The language of the Agreement proves otherwise.

Conceding that there is no language in Paragraph 7 that even suggests a purported "continuing" or "perpetual" duty of ATP to pay plaintiff for any transactions consummated after the 12-month "tail" period, i.e., after April 1, 2005, plaintiff relies upon Paragraph 2(b) as the sole support for its argument. (Opp. at p. 20.) Plaintiff claims that the words "each," "to be made," and "potential," as used in conjunction with the term "Capital Transaction"[5] mean that the Agreement "clearly and unequivocally contemplated and applied to *multiple* Capital Transactions." (Opp. at p. 8.) However, these words – and the conclusion that plaintiff draws from them, i.e., that there may be more than one transaction – say nothing of any purported "triggering event" and nothing regarding any purported "continuing" duty to pay plaintiff beyond the expiration of the 12-month "tail" period. The words "each," "to be made," and/or "potential" merely allow for the possibility that there might be more than one qualifying transaction that could take place during the 14-month period between February 1, 2004, the date of the Agreement, and the expiration of the "tail" period on April 1, 2005.

---

[5] *See* Agreement at ¶ 2(b), p. 1 ("for each Capital Transaction" . . . "to be made"). Plaintiff takes the word "potential" from Paragraph 1's definition of Capital Transaction in the "Services to be Rendered" section, which states that ATP "hereby engages Bison" "as its financial advisor for the purpose of advising the Company with respect to potential financing alternatives and assisting the Company in structuring and negotiating the terms of *potential* financing arrangements ('Capital Transactions')". (Opp. at p. 8.) There is no dispute that as of February 1, 2004, the date of the Agreement, any contemplated transaction under the Agreement obviously would have been "potential." Plaintiff nonetheless repeatedly cites these words throughout its papers, with varying degrees of additional emphasis, *see, e.g.*, Opp. at pp. 1, 8, 9, 13, 14, 18, 20, 21, 22, 23.

3

Plaintiff's "trigger" theory cannot obfuscate the clear and unambiguous language of the Agreement.[6]

### B. The Case Law Does Not Support Plaintiff's Construction Of The Agreement

Plaintiff does not cite any case law that could support its construction of the Agreement. We are aware of no court that has ever construed an express temporal limit in an Agreement to mean the exact opposite, i.e., that the obligations in the Agreement should continue indefinitely into the future. Courts interpreting termination dates in contracts and "tail" provisions that permit a party to earn a fee for an additional specified time period have never found them to cause "triggering events" or construed such provisions to create "continuing" duties.[7]

The only cases plaintiff relies upon interpreted contracts that had no expressed termination or expiration date and, thus, are inapposite. For example, plaintiff's lengthy

---

[6] See, e.g., Padilla v. Maersk Line, Ltd., 636 F. Supp. 2d 256, 260 n.1 (S.D.N.Y. 2009) (quoting Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 598 (2d Cir. 2005)) ("[A] contract's language is not ambiguous simply because the parties urge different interpretations, or if one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'").

[7] Plaintiff's attempt to distinguish ATP's cases is unavailing. Plaintiff claims that the decision in Phoenix Capital Invs. LLC v. Ellington Mgmt. Group, LLC, 51 A.D.3d 549, 549-550, 859 N.Y.S.2d 46, 48 (1st Dep't 2008), "shows the industry practice of continuing compensation for firms who raise money" (Opp. at p. 22) when, in fact, the court found no such practice and sent the plaintiff investment broker home with no fee at all, finding his claim was "nonviable" because the investment transaction did not occur within the "one-year tail period." Id. Plaintiff's discussion of Peter J. Solomon Co. v. Oneida, Ltd., No. 09 Civ. 2229 (DC), 2010 WL 234827, at *1 (S.D.N.Y. Jan. 22, 2010), ignores the fact that the court there considered a provision similar to the one here: the financial advisor "shall be entitled to its full fees under Section 3 hereof in the event that any Transaction is consummated at any time prior to the expiration of one year after such termination." Id. While in Peter J. Solomon, unlike here, there was an issue as to when "termination" occurred, there was no dispute that the relevant provision, "known as a 'tail provision'", "provided that termination of the [agreement] would not terminate [the financial advisor's] entitlement to a transaction fee _for 'any Transaction' consummated before the expiration of one year after the termination._" Id. at *2 (emphasis added). Accordingly, the language of Paragraph 7 of the Agreement here – stating that plaintiff would be entitled to a fee "in the event" that a transaction is consummated within a 12-month period – can only mean that a fee is owed _for an actual transaction_ that is consummated during that time period. No reasonable reading of this provision could mean that a fee would be owed for any and all subsequent transactions after the expiration of the "tail" period, as plaintiff contends. See id. at *4 ("If the parties had actually intended that [plaintiff financial advisor] would receive a transaction fee for any and all transactions that were consummated . . . they surely would have so provided explicitly.").

4

discussion of this court's 1959 opinion in *Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.*, 178 F. Supp. 655 (S.D. N.Y. 1959) (Opp. at pp. 23-24), disregards this critical distinction – the agreement in *Warner-Lambert* did not contain an explicit termination date, whereas the Agreement here expressly provided that it "shall terminate" "on April 1, 2004" and expire 12 months later, on April 1, 2005. While the court in *Warner-Lambert* held that the contracting parties intended the royalty compensation contract to continue for so long as the defendant continued to manufacture and sell the product under contract, the court expressly limited its holding to "[c]ontracts which provide no fixed date for the termination." *See Warner-Lambert*, 178 F. Supp. at 661-62. Accordingly, *Warner-Lambert* is of no help to plaintiff. Likewise, none of the other cases cited by plaintiff involves a contract with express language providing for fixed termination or expiration dates; and none of the cases applies New York law.[8]

Moreover, other provisions of the Agreement only bolster the conclusion that the Agreement provided for its termination on April 1, 2004, and then for its expiration 12 months later, on April 1, 2005. As just one example, Paragraph 6 expressly acknowledges the "termination" and "expiration" of the Agreement. *See* Agreement, ¶ 6, p. 4 (plaintiff's indemnity rights "shall survive any termination or expiration of this Agreement"). *See, e.g., In re Oneida, Ltd.*, 400 B.R. 384, 391 (S.D.N.Y. Bankr. 2009), *aff'd, Peter J. Solomon Co.*, 2010 WL 234827

---

[8] Rather, the contracts in each of the cases cited by Bison provided only that the defendant would pay the plaintiff *so long as* the defendant continued to provide the particular goods or services. *See Phelps v. Shawprint, Inc.*, 103 N.E.2d 687, 688 (Mass. 1952) (defendant agreed to pay plaintiff $100 a month "**so long as** they should be connected with the defendant corporation") (emphasis added); *Hoover v. Kleer-Pak of N.C., Inc.*, 236 S.E.2d 386, 387 (N.C. Ct. App. 1977) ("[P]laintiff was to receive 5% commission on all such sales '**as long as** Kleer-Pak sells its products to Brevoni.'") (emphasis added); *Lura v. Multiplex, Inc.*, 129 Cal. App. 3d 410, 413 (Cal. Ct. App. 1982) (defendant was "obligated to pay commissions **as long as** specified accounts" obtained by plaintiff were maintained) (emphasis added); *Muller Enters., Inc. v. Gerber*, 133 N.W.2d 913, 919 (Neb. 1965) (applying Massachusetts law) (defendant's "only obligation is to pay Muller 10 percent for **as long as** he himself performs the contract.") (emphasis added); *Muller Enters., Inc. v. Samuel Gerber Adver. Agency, Inc.*, 153 N.W.2d 920, 922-24 (Neb. 1967); *Alexander v. Capital Paint Co.*, 111 A. 140, 143 (Ct. App. Md. 1920) (parties agreed to commission structure and put "no time limit on this arrangement").

5

(finding that where provision stated that party's indemnity rights "shall survive any termination, expiration or completion" of financial advisor's engagement, the parties necessarily intended for the contract to be terminated, expire, or be completed). Accordingly, when the Agreement's 12-month "tail" period expired on April 1, 2005, so did the Agreement. No case law that plaintiff cites suggests otherwise.

II. **The Words Of The Agreement Belie Plaintiff's Argument That No Services Were Necessary For It To Earn A Fee On The Transactions In Counts III Through XIII**

Plaintiff concedes, as it must, that the Agreement was a limited services agreement and that in order to receive a fee, plaintiff had to provide at least some services to ATP. Plaintiff claims it provided those services by "helping ATP arrange and consummate the initial Capital Transaction" (Opp. at p. 17), for which it was paid over $1.85 million for a couple of months' work.[9] Plaintiff claims that "once Bison completed its work approaching CSFB on ATP's behalf" regarding the initial transaction, ATP, from that point on, had a continuing duty to pay Bison for all subsequent transactions with CSFB regardless of whether plaintiff was even aware of the existence of those transactions. (Opp. at p. 18.) Plaintiff concedes that it was not involved in, and provided no services with respect to, any subsequent ATP-CSFB transactions, including those that serve as the basis for Counts III through XIII.[10]

---

[9] Plaintiff concedes that it invoiced, sought payment and was paid in full by ATP over $1.85 million for the Credit Suisse First Boston ("CSFB") transaction contemplated by the Agreement. (*See, e.g.*, Am. Compl., ¶¶ 27, 137.) Likewise, there is no dispute that plaintiff never demanded from ATP any payment for the transactions contained in Counts III through XIII for over five years – until the commencement of this lawsuit.

[10] While plaintiff argues that it really does not concede this point (Opp. at pp. 17-18), in fact, it does, since it stresses it did not need to provide any services after the first transaction. (Opp. at p. 18.) Moreover, apparently, plaintiff now also concedes that it provided no services not only with respect to the transactions enumerated in Counts III through XIII (which are the subject of this motion), but also provided no services in connection with the transactions that are identified in Counts I and II, which would, therefore, require dismissal of those Counts as well. (Opp. at p. 19 n. 12 ("Bison's involvement in

6

Plaintiff argues it was not required to perform any services after the initial transaction because the "Compensation" provision in Paragraph 2(b) of the Agreement did not expressly restate the services plaintiff was to perform (as set forth in Paragraph 1, titled "Services to be Rendered"), and only provided that "for each Capital Transaction . . ." a fee will be paid. (Opp. at p. 19.) The sole basis for plaintiff's argument is its flawed assumption regarding Paragraphs 2(b) and 2(c) (both pertaining to "Capital Transactions") in comparison with Paragraph 2(d) (pertaining to "Transactions," which are not at issue here). Plaintiff claims the fact that Paragraph 2(d) contains language regarding the services plaintiff was to provide in order to receive a fee,[11] while Paragraphs 2(b) and 2(c) do not, must mean that the parties did not intend that plaintiff had to provide any services with respect to Capital Transactions in order to earn a fee. Plaintiff is wrong. The reason for the differing language is simple: because "Capital Transaction," by its very definition, requires that plaintiff participate in "advising" and "assisting" ATP "in structuring and negotiating" the actual terms of the particular financing arrangement, there was no need to repeat this condition in Paragraphs 2(b) or 2(c).[12] However, the Agreement's definition of "Transaction" does not include these services, so it was necessary to restate them in Paragraph 2(d). Regardless of the type of transaction, the Agreement is entirely consistent in never imposing a "continuing" obligation to pay fees for any transaction for which no services were rendered.

---

the Capital Transactions that are set forth in Counts I and II is the same as its involvement in the Capital Transactions that make up Counts III through XIII").)

[11] Specifically, that "for each other Transaction with respect to which Bison advises or assists ATP pursuant to Section 1(b)" Bison will receive a fee (Opp. at p. 19).

[12] Paragraph 1 of the Agreement, titled "Services to be Rendered," expressly provides that "ATP hereby engages Bison . . . as its financial advisor for the purpose of . . . advising the Company with respect to potential financing alternatives and assisting the Company in structuring and negotiating the terms of potential financial arrangements ('Capital Transactions')." (Agreement, p. 1, ¶ 1(a).)

While no language in the Agreement can support such a "continuing" obligation, plaintiff cites a series of cases that purportedly support its interpretation of the Agreement by showing that continuing compensation agreements are common in the investment banking industry. Bison's reliance on these opinions is misplaced. Under the particular facts of these cases, the various district courts concluded that the exclusive financial advisors were entitled to fees despite their lack of involvement in the transactions; however, Bison ignores one crucial fact common to these cases – each of the transactions at issue was consummated *within* the applicable time frame of the agreement, not afterwards. *See Deutsche Bank Sec. Inc. v. Rhodes*, 578 F. Supp. 2d 652, 657-59 (S.D.N.Y. 2008) (transaction at issue consummated in July 2005, plainly within one year exclusivity period of the agreement); *Mercury Partners LLC v. Pacific Med. Bldgs., L.P.*, No. 02 Civ. 6005 (HBP), 2007 WL 2197830, at *17 (S.D.N.Y. July 31, 2007) (transactions at issue consummated during the thirty-six month "tail" provision of the agreement ending March 2006); *CIBC World Mkts. Corp. v. TechTrader, Inc.*, 183 F. Supp. 2d 605, 607-08 (S.D.N.Y. 2001) (transaction at issue consummated in June 2000, during the term of the agreement); *Lazard Freres & Co. v. Crown Sterling Mgmt., Inc.*, 901 F. Supp. 133, 136 (S.D.N.Y. 1995) (transaction at issue consummated in February 1994 while the agreement was in effect); *Chase Manhattan Bank v. Remington Prods., Inc.*, 865 F. Supp. 194, 197-98 (S.D.N.Y. 1994) (transaction at issue consummated in July 1992, plainly within twelve-month "tail" provision of the agreement ending May 1993); *PaineWebber Inc. v. Campeau Corp.*, 670 F. Supp. 100, 102-04 (S.D.N.Y. 1987) (transactions at issue consummated within twelve-month "bonus" provision of the agreement).

In fact, the entire Agreement makes clear that Bison was to provide a service and earn compensation under Paragraph 2(b) *only* on transactions which it actually advised and assisted

ATP in negotiating and structuring and that were consummated prior to the end of the "tail" period (*see* Agreement, Paragraph 7, referring to Paragraph 2).[13]

---

[13] *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (contracts should be construed to favor interpretation that gives reasonable and effective meaning to all terms of contract). Tellingly, plaintiff does not even address all the other provisions in the Agreement and cited in ATP's moving papers (Mov. Brf. at pp. 11-12) that demonstrate that Bison unambiguously agreed to provide services that consisted of advising and assisting ATP in structuring and negotiating the actual terms of any financing transaction for which it could seek compensation.

## CONCLUSION

For all these reasons, and those set forth in its moving papers, Defendant ATP Oil & Gas Corporation respectfully requests that the Court dismiss Counts III through XIII of the Amended Complaint on the grounds that Plaintiff has failed to state a claim upon which relief can be granted, and that the Court order such other and further relief as may be just.

Dated: New York, New York
May 3, 2010

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP

By: /S/
Gerald G. Paul
Lissa C. Gipson
One Liberty Plaza
New York, New York 10006
Tel: (212) 412-9500
Fax: (212) 964-9200
Email: gpaul@fzwz.com
Email: lgipson@fzwz.com

-and-

Edward J. Murphy
Brit T. Brown
Benjamin A. Escobar, Jr.
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Tel: (713) 623-0887
Fax: (713) 960-1527
Email: emurphy@bmpllp.com
Email: bbrown@bmpllp.com
Email: bescobar@bmpllp.com

*Attorneys for Defendant*

TO: HUNTON & WILLIAMS LLP
Jeffrey W. Gutchess
1111 Brickell Avenue
Miami, Florida 33139
Tel: (305) 810-2500
Fax: (305) 810-2460
Email: jgutchess@hunton.com

*Attorneys for Plaintiff*