

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BISON CAPITAL CORPORATION                :     Civil Action No. 10 CV 714
                                         :           (SHS) (AJP)
                                         :
                              Plaintiff, :
                                         :
         - against -                     :
                                         :
ATP OIL & GAS CORPORATION                :
                                         :
                              Defendant. :
                                         :
------------------------------------------------------------X

## JOINT PROPOSED PRE-TRIAL ORDER

Plaintiff Bison Capital Corporation ("Bison") and Defendant ATP Oil & Gas Corporation ("ATP") respectfully submit this Joint Pretrial Order pursuant to Rule 3(A) of the Individual Practices of Judge Sidney H. Stein.

    **1.**    **The Full Caption Of The Action.**

The full caption of the action appears above.

    **2.**    **The Names, Addresses (Including Firm Names), And Telephone And Fax Numbers Of Trial Counsel.**

For Plaintiff: *Bison Capital Corporation*

Marty Steinberg
Jeffrey W. Gutchess
Patricia Acosta
Hunton & Williams LLP
1111 Brickell Avenue
Miami, Florida, 33139
(305) 810-2500
(305)810-1618

For Defendant: *ATP Oil & Gas Corporation*

Brit T. Brown
Benjamin A. Escobar, Jr.
Beirne, Maynard & Parsons, LLP

>1300 Post Oak Blvd., Suite 2200
>Houston, TX 77056
>T: (713) 623-0887
>F: (713) 960-1527
>
>Gerald G. Paul
>Lissa C. Gipson
>Flemming Zulack Williamson Zauderer LLP
>One Liberty Plaza
>New York, NY 10006
>T: (212) 412-9552
>F: (212) 964-9200

3. **A Brief Statement By Plaintiff As To The Basis Of Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Bison is incorporated in Delaware and has its principal place of business in Connecticut. ATP is incorporated and has its principal place of business in Texas. The parties have agreed to the exclusive jurisdiction and venue of this Court.

4. **A Brief Summary By Each Party Of The Claims And Defenses Which Remain To Be Tried.**

Set forth below is Bison's statement of its claims and ATP's statement of Bison's claims and ATP's defenses without evidentiary recitals

   A.  **Plaintiff's Claims.**

In February 2004, Defendant ATP was a small company engaged in acquisition and development of undeveloped oil and gas reserves in shallow waters of the Gulf of Mexico and North Sea. ATP had a large multi-year inventory of undeveloped reserves for future development and had begun focusing on larger deepwater tracts in which ATP had ownership interests of up to 100%. Development of those large tracts could generate sharp increases in its oil and gas production, hundreds of millions of dollars of revenues, and trigger a huge increase in the value of ATP's stock, making ATP's senior officers – who owned 50+% of ATP's stock – very rich

-3-

men. However, the deepwater projects would take many years to develop and require billions of dollars of financing ATP did not have and had not been able to obtain.

ATP was in extreme financial distress and its management desperate, with a working capital deficit of $61 million, shareholders' equity of only $4 million, and running low on cash. It was in the clutches of the well-known "vulture" fund Cerberus, which had already delivered default notices under its loan agreement, taken control of ATP's cash and incoming revenues, required ATP to pay back $15 million by February 16, 2004 (which ATP lacked funds to repay) and required ATP to raise $30 million by March 31, 2004 or face consequences of another default, which ATP itself admitted would be "fatal." ATP had retained Alvarez & Marsal (an advisor to companies in financial distress and bankruptcy) and bankruptcy counsel and prepared bankruptcy filings.

After seeking but failing to obtain the needed financing from at least 47 other potential financing sources, in February 2004 ATP hired Bison President Edwin Wells to help find a new financing source. Mr. Wells has 35+ years of experience with the petroleum and power generation industries and has provided advice regarding hundreds of financings and potential financings, including secured and unsecured loans from individual banks and multi-bank syndicates, public offerings, private placements and exchange offers of debt, equity and mezzanine securities in the capital markets.

ATP explained to Bison its need to obtain a major new financing source which would (a) raise funds sufficient funds to replace the "vulture" and bolster ATP's working capital, and (b) stick with ATP thereafter to provide the huge amounts of financing ATP would need in future years to develop ATP's multi-year inventory of undeveloped oil and gas reserves and fund ATP's continuing pursuit of its aggressive growth strategy. ATP's needs were reflected in the

parties' Contract, which, in Section 2(b) requires ATP to pay Bison:

> (b) "*for each Capital Transaction* through which funds are made available to or for the benefit of ATP, its affiliates or lenders as a result of arrangements made or *to be made* by investment or commercial banking firms approached by Bison on behalf of ATP, as listed in Exhibit A . . . cash fees equal to one per cent (1%) of the aggregate Value of such funds, such fees *in each case* to be paid on the date such funds are made available, provided, however, for funds made available through the sale, exchange or placement of equity securities, such fees shall be equal to one and one quarter per cent (1.25%) of the aggregate Value of such funds." (emphasis added)

By specifying that ATP must pay Bison "*for each Capital Transaction*" with a listed bank approached by Bison on ATP's behalf and specifying the timing of payment "*in each case*", the Contract clearly and unequivocally contemplated and applied to *multiple* financings. By specifying that ATP must pay Bison "for each Capital Transaction made or *to be made*" by such a listed bank and defining Capital Transactions as "*potential* financing arrangements," the Contract also clearly and unequivocally contemplated and applied to *future* financings.

ATP argues that the second clause in Paragraph 7 cuts off Bison's right to fees. But that is not what Paragraph 7 says. It provides:

> "Term: This Agreement shall commence on the date hereof and shall terminate unless extended by Bison and the Company, on April 1, 2004 . . . *Notwithstanding* the foregoing, Bison shall be entitled to the fees set forth *in Paragraph 2* above *in the event* the Company consummates *or* enters into an agreement or arrangement providing for *a* Capital Transaction ... at any time within twelve months following termination of this Agreement; and *no termination of Bison's engagement hereunder shall affect the Company's obligation to pay fees and expenses to the extent provided herein*...." (emphasis added.)

The intent of the second clause in Paragraph 7 is to prevent ATP from circumventing its continuing fee obligations to Bison after Bison provided its valuable services by delaying a Capital Transaction until after the Contract was terminated, either by its terms on April 1, 2004 or earlier by ATP. That clause established an initial "triggering event" requirement for ATP's obligation to pay fees, which can be satisfied with respect to a listed bank approached by Bison

-4-

on ATP's behalf in any of three ways: by (a) ATP's *consummation* of *a* Capital Transaction, or (b) ATP's entry into an *agreement* providing for *a* Capital Transaction, or (c) ATP's entry into an *arrangement* providing for *a* Capital Transaction, at any time within twelve months following April 1, 2004. Once that initial "triggering event" occurs, ATP's fee obligations to Bison are governed by Paragraph 2, as Paragraph 7 itself provides.

The "12 month" clause in Paragraph 7 does not in any way cut off ATP's obligation to pay fees to Bison for ATP financings with such a listed bank once they have been "triggered." Rather, the last clause of Paragraph 7 states explicitly that such fees must continue to be paid, even *after* termination of the Contract, stating *"no termination of Bison's engagement hereunder shall affect the Company's obligation to pay fees and expenses to the extent provided herein..."*

Bison obtained an extraordinarily well-qualified new financing source which saved ATP from bankruptcy in 2004 and provided more than $8.5 billion of financing to ATP, funding development of its multi-year inventory and continued pursuit of its growth strategy. The funds Bison made available, through Credit Suisse, fueled huge increases in ATP's stock price, making ATP's officers very rich men and generating remarkable financial gains for other shareholders.

### B.   Plaintiff's Damages.

ATP paid Bison for the First Capital Transaction with the investment bank approached by Bison, Credit Suisse First Boston but has failed to pay Bison for other Capital Transactions with that bank. The Contract requires ATP to pay Bison 1% to 1.25% of the aggregate Value of funds made available, with "Value" defined in the Paragraph 3 as: "the *face amount* of any indebtedness for borrowed money[.]" The aggregate Value and Bison's fees are set forth below:

| Capital Transactions | Dates | Aggregate Value (Millions) | Bison Fees (Millions) |
|---|---|---|---|
| First | March 29, 2004 | $185.000 | $1.850 |

| | | | |
|---|---|---|---|
| Second | September 24, 2004 | $220.000 | $2.200 |
| Third | April 15, 2005 | $350.000 | $3.500 |
| Fourth | August 2, 2005 | $175.000 | $2.1875 |
| Fifth | March 20, 2006 | $150.000 | $1.875 |
| Sixth | June 22, 2006 | $525.000 | $5.250 |
| Seventh | November 22, 2006 | $1,125.000 | $11.250 |
| Eighth | March 23, 2007 | $1,325.000 | $13.250 |
| Ninth | September 7, 2007 | $210.000 | $2.100 |
| Tenth | June 27, 2008 | $1,700.000 | $17.000 |
| Eleventh | September 29, 2009 | $98.050 | $1.225625 |
| | November 5, 2009 | $9.5275 | $0.11909375 |
| Twelfth | September 29, 2009 | $140.000 | $1.750 |
| Thirteenth | November 2, 2009 | $1,247.875 | $12.47875 |
| Fourteenth | January 29, 2010 | $1,245.250 | $12.45250 |
| *Total:* | *Second - Thirteenth* | *$8,520.7025* | *$86.63846875* |
| | | or | or |
| | | *$8,520,702,500* | *$86,638,468.75* |

### C. ATP's Statement of Plaintiff's Claims and Defendant's Defenses Without Evidentiary Recitals

Because Plaintiff has refused to agree to a statement of its claims "without recital of evidentiary matter" as required by this Court's Rules (*see* Individual Practices of Judge Sidney H. Stein, Rule 3(A)(iv)) and Plaintiff's statement contains numerous misstatements and characterizations incapable of being factually supported, ATP sets forth Plaintiff's claims without evidentiary recitals, rather than offer rebuttal evidentiary contentions.

The only claims that are to be tried are Plaintiff's claims for breach of contract as they relate to certain success fees alleged to be related to certain Capital Transactions, as the term is defined by the parties' letter agreement dated February 1, 2004 (the "Agreement"). Bison contends it is owed a success fee pursuant to paragraph 2(b) of the Agreement on transactions involving ATP and Credit Suisse First Boston and its affiliate or successor Credit Suisse, that were consummated at various times between September 24, 2004 and January 29, 2010.

Defendant has not asserted any counterclaim. Plaintiff's claims should be resolved by application of principles of contract law of the State of New York.

ATP has asserted the following defenses (some of which are denials of claims, and others of which are affirmative defenses) that remain to be tried, all of which should be resolved by application of principles of contract law of the State of New York:

(a) The Agreement is unambiguous and the clear terms of the Agreement bar Bison's claim for damages. *See* Defendant, ATP Oil & Gas Corporation's Answer to Plaintiff's First Amended Complaint (the "Answer"), ¶ 382).

(b) In the alternative, the Agreement is ambiguous, and application of New York's principles of contract construction and interpretation, bar Bison's claims because they are not based on the Agreement as intended by ATP or Bison when they entered into the Agreement. *See* Answer, ¶ 383.

(c) Bison did not provide any services in relation to the transactions in question and, thus, is owned no success fee. *See* Answer, ¶ 384.

(d) ATP paid all fees it owed and, thus, has complied fully with its contractual obligations. *See* Answer, ¶ 385.

(e) ATP acted in good faith while Bison breached the duty of good faith and fair dealing in asserting a construction and interpretation of the Agreement that is inconsistent with its prior manifestations of intent. *See* Answer, ¶¶ 386-387.

(f) The relief sought by Bison is not based on the bargained for exchange of the parties -- i.e. ATP did not intend to pay success fees on a transaction for which Bison provided no services and ATP did not intend paragraph 7 to be a trigger to create an obligation to pay Bison fees for an indefinite time. *See* Answer, ¶ 388.

(g) Bison's claim for continuing compensation is barred by lack of consideration and is unenforceable as unconscionable. *See* Answer, ¶ 389.

(h) Bison has not mitigated damages. *See* Answer, ¶ 390.

(i) Bison is estopped from recovery on its claim for fees because the claims are inconsistent with its representations to ATP on which ATP relied. *See* Answer, ¶ 391.

(j) Bison ratified ATP's conduct by failing to act on knowledge available to it. *See* Answer, ¶ 392.

(k) Bison has not correctly calculated damages, if any, for which ATP is allegedly liable. *See* Answer, ¶ 393.

(l) Punitive damages are not recoverable for breach of contract and, in any event, are not warranted under the facts of this case. *See* Answer, ¶¶ 394 and 395.

(m) ATP's conduct was not directed at the public generally and, therefore, the claim for punitive damages is barred. *See* Answer, ¶ 396.

(n) ATP did not engage in reckless, malicious, willful or grossly negligent conduct and Bison has not alleged conduct that could support a judgment for punitive damages. *See* Answer, ¶ 397.

5. **A Statement As To Whether The Case Is To Be Tried With Our Without A Jury, And The Number Of Trial Days Needed.**

The case is to be tried without a jury. The parties estimate that they will need four days of trial. The parties have not consented to trial of the case by a magistrate judge.

6. **Any Stipulations Or Agreed Statements Of Fact Or Law.**

The parties have attempted to negotiate an agreed statement of facts as to the various Capital Transactions at issue but to date have been unable to agree on the terminology.

7. **Witnesses.**

A. **Plaintiff's Witnesses.**

*[handwritten: In person]*

| | |
|---|---|
| Edwin Wells, Jr. | In person |
| T. Paul Bulmahn | ~~In person~~/Video Deposition |
| Gerald Schlief *[handwritten: ATP Sr VP]* | Video Deposition |
| Albert Reese | In person/Video Deposition |
| Brian Nelson | Video Deposition |
| Keith Godwin *[handwritten]* | Video Deposition |
| Bruce Foerster | Video Deposition |
| Tom Hassen | Video Deposition |
| Pete Boukouzis | Video Deposition |

The plaintiff may call some or all of the persons on the foregoing list at trial. In addition, the plaintiff reserves the right to call as its own witnesses any of the persons identified on defendant's witness list, and the right to call any person as a witness on rebuttal, regardless of

-8-

whether that person has appeared on either party's witness list.

### B. Defendant's Witnesses.

*See* ATP's Trial Witness List, attached hereto as **Exhibit D1**. ATP may call some or all of the persons on the foregoing list at trial. In addition, ATP reserves the right to call, by deposition or in person, as its own witnesses any of the persons identified on plaintiff's witness list, and the right to call any person as a witness on rebuttal, regardless of whether that person has appeared on either party's witness list.

### 8. A Designation By Each Party Of Deposition Testimony To Be Offered In Its Case In Chief, With Any Cross-Designations And Objections By Any Other Party.

### A. Deposition Designations By Plaintiff.

Plaintiff reserves the right to utilize any deposition testimony of any witness who is or becomes unavailable to testify at the time of trial, and also to use any deposition testimony for purposes of cross-examination, impeachment or rebuttal. Defendant has submitted its objections and cross-designations by separate attachment.

| September 7, 2010 Deposition of T. Paul Bulmahn |
|---|
| Designation |
| 9:16-25 |
| 11:7-24 |
| 12:11-16 |
| 12:22-13:5 |
| 22:18-23 |
| 22:24-23:6 |
| 23:20-24:19 |
| 30:16-20 |
| 34:15-23 |
| 35:11-19 |
| 43:22-44:6 |
| 47:8-19 |
| 49:1-13 |
| 51:20-52:11 |
| 54:8-20 |
| 55:1-3 |

| September 7, 2010 Deposition of T. Paul Bulmahn |
|---|
| Designation |
| 55:9-56:8 |
| 56:18-22 |
| 57:10-22 |
| 60:14-17 |
| 63:12-15 |
| 66:11-68:6 |
| 68:16-19 |
| 69:4-16 |
| 75:14-18 |
| 78:7-80:22 |
| 82:5-83:8 |
| 94:1-7 |
| 95:18-96:25 |
| 98:1-10 |
| 99:6-8 |
| 101:25-102:11 |
| 104:16-19 |
| 104:20-25 |
| 107:8-108:24 |
| 109:23-110:1 |
| 112:19-113:4 |
| 114:8-15 |
| 114:21-25 |
| 117:7-12 |
| 119:14-16 |
| 121:12-18 |
| 128:14-16 |
| 128:20-129:20 |
| 130:21-24 |
| 133:1-6 |
| 139:1-23 |
| 145:13-23 |
| 152:9-11 |
| 156:6-18 |
| 159:19-22 |
| 163:20-164:2 |
| 164:21-165:2 |
| 166:19-22 |
| 168:2-5 |
| 169:22-180:5 |
| 183:1-11 |
| 186:10-25 |
| 187:6-24 |

| September 7, 2010 Deposition of T. Paul Bulmahn |
|---|
| Designation |
| 194:2-197:1 |
| 197:5-198:13 |
| 201:14-202:5 |
| 202:24-203:21 |
| 204:8-206:14 |
| 207:11-17 |
| 213:20-214:22 |
| 215:9-216-2 |
| 216:4-217:18 |
| 217:23-218:25 |
| 219:1-17 |
| 220:4-16 |
| 221:4-8 |

| September 9, 2010 Deposition of Albert Reese |
|---|
| Designation |
| 8:5-6 |
| 16:2-9 |
| 17:2-9 |
| 18:15-25 |
| 23:17-24:18 |
| 25:8-19 |
| 26:23-29:3 |
| 30:8-25 |
| 31:1-9 |
| 34:12-35:12 |
| 40:25-42:4 |
| 42:20-43:7 |
| 50:18-51:10 |
| 51:19-52:5 |
| 54:5-14 |
| 56:9-17 |
| 58:12-59:20 |
| 62:7-19 |
| 65:16-66:3 |
| 66:13-23 |
| 68:16-69:7 |
| 87:7-90:25 |
| 98:4-21 |
| 100:24-101:5 |
| 102:9-103:23 |
| 112:5-19 |

| September 9, 2010 Deposition of Albert Reese |
|---|
| **Designation** |
| 113:9-116:12 |
| 118:12-119:25 |
| 124:1-23 |
| 125:21-126:18 |
| 127:7-128:7 |
| 130:12-24 |
| 137:11-139:25 |
| 149:8-157:5 |
| 159:20-160:3 |
| 166:2-5 |
| 167:1-15 |
| 168:1-15 |
| 168:22-169:5 |
| 169:21-172:3 |
| 173:24-175:6 |
| 177:14-179:18 |
| 181:20-25 |
| 182:6-185:11 |
| 186:2-188:12 |
| 191:14-21 |
| 195:7-198:19 |
| 199:16-200:22 |
| 201:16-202:22 |
| 206:17-207:25 |
| 208:12-15 |
| 208:23-209:19 |
| 212:2-17 |
| 218:20-219:6 |
| 220:4-13 |
| 225:19-226:11 |
| 231:10-232:13 |
| 233:9-234:18 |
| 235:8-20 |
| 238:15-245:18 |

| September 15, 2010 Deposition of Gerald Schlief (Volume I) |
|---|
| **Designation** |
| 5:5-7 |
| 18:21-21:13 |

| October 5, 2010 Deposition of Gerald Schlief (Volume II) |
|---|

| Designation |
|---|
| 7:10-8:8 |
| 8:24-10:2 |
| 10:5-11:20 |
| 14:9-15:10 |
| 18:5-19:18 |
| 20:1-17 |
| 24:15-25:1 |
| 25:11-26:2 |
| 28:1-8 |
| 30:21-31:10 |
| 34:16-35:3 |
| 35:8-12 |
| 36:23-37:25 |
| 40:22-41:13 |
| 44:8-45:3 |
| 45:16-46:10 |
| 46:24-48:20 |
| 52:21-56:8 |
| 56:12-22 |
| 63:8-68:5 |
| 68:10-17 |
| 71:1-9 |
| 71:19-73:5 |
| 73:6-74:23 |
| 76:5-77:12 |
| 77:13-78:5 |
| 78:10-79:1 |
| 87:12-16 |
| 88:2389:16 |
| 91:19-92:15 |
| 93:6-17 |
| 95:19-97:3 |
| 99:3-101:7 |
| 106:13-14 |
| 107:6-12 |
| 109:3-110:25 |
| 111:7-114:8 |
| 116:6-118:1 |
| 122:1139:5 |
| 140:7-12 |
| 141:12-143:9 |
| 144:24145:21 |
| 146:22-147:12 |
| 147:20-150:5 |

| October 5, 2010 Deposition of Gerald Schlief (Volume II) |
|---|
| Designation |
| 150:25-152:6 |
| 155:20-156:4 |
| 157:7-159:16 |
| 160:7-161:10 |
| 166:4-10 |
| 168:4-169:11 |
| 173:24-175:14 |
| 175:24-186:16 |
| 190:1-192:10 |
| 194:1-11 |
| 195:2-197:15 |
| 198:10-201:24 |

| October 6, 2010 Deposition of Keith Godwin |
|---|
| Designation |
| 5:9-11 |
| 9:4-10 |
| 11:22-17:12 |
| 19:22-21:14 |
| 23:3-31:22 |
| 33:7-9 |
| 34:5-37:9 |
| 51:6-52:13 |

| October 11, 2010 Deposition of Brian C. Nelson |
|---|
| Designation |
| 6:10-12 |
| 17:1-11 |
| 17:24-18:8 |
| 18:22-20:1 |
| 20:10-20 |
| 21:14-19 |
| 22:22-24:8 |
| 24:22-25:8 |
| 28:14-29:5 |
| 30:4-8 |
| 32:12-15 |
| 33:5-13 |
| 34:24-35:1 |
| 35:15-40:17 |

| October 11, 2010 Deposition of Brian C. Nelson |
|---|
| **Designation** |
| 41:3-5 |
| 41:7-20 |
| 42:25-45:22 |
| 46:3-14 |
| 46:15-48:2 |
| 50:12-51:19 |
| 55:1-56:5 |
| 56:24-57:12 |
| 58:13-60:8 |
| 61:7-63:10 |
| 64:5-19 |
| 65:8-67:15 |
| 69::4-13 |
| 74:12-75:18 |
| 77:5-78:23 |
| 82:6-12 |
| 85:24-86:1 |
| 86:8-22 |
| 87:4-92:10 |
| 93:12-101:11 |
| 102:8-105:24 |
| 107:10-20 |
| 108:10-18 |
| 119:4-11 |

| October 19, 2010 Deposition of Tom Hassen |
|---|
| **Designation** |
| 6:10-12 |
| 8:4-9 |
| 10:18-11:7 |
| 11:22-12:19 |
| 13:16-20 |
| 16:8-18 |
| 17:18-18:3 |
| 20:19-24 |
| 22:19-23:4 |
| 23:14-24:17 |
| 26:7-19 |
| 27:7-28:16 |
| 29:11-22 |
| 30:13-21 |

| October 19, 2010 Deposition of Tom Hassen |
|---|
| **Designation** |
| 31:4-32:7 |
| 33:6-34:16 |
| 35:13-36:18 |
| 37:24-38:23 |
| 42:9-44:2 |
| 45:16-50:9 |
| 51:10-52:21 |
| 54:5-22 |
| 55:10-21 |
| 63:22-25 |
| 66:9-67:3 |
| 68:4-69:12 |
| 69:20-70:14 |
| 70:22-72:2 |
| 72:16-73:20 |
| 80:21-82:5 |
| 82:7-83:9 |
| 85:24-87:2 |
| 88:15-90:2 |
| 97:3-9 |

| October 20, 2010, 2008 Deposition of Bruce Foerster |
|---|
| **Designation** |
| 4:25-5:2 |
| 10:24-12:17 |
| 14:21-16:17 |
| 18:13-24 |
| 19:16-24 |
| 20:4-22 |
| 21:1-25 |
| 23:1-14 |
| 28:3-30:10 |
| 30:17-36:3 |
| 38:24-40:18 |
| 42:2-21 |
| 43:8-45:19 |
| 46:15-47:24 |
| 48:10-53:17 |
| 54:5-55:16 |
| 56:10-58:25 |
| 61:13-75:6 |
| 75:22-78:22 |

| October 20, 2010, 2008 Deposition of Bruce Foerster |
|---|
| Designation |
| 79:10-88:8 |
| 89:2-100:20 |
| 105:16-111:19 |
| 112:4-135:16 |
| 136:1-146:16 |

| October 21, 2010 Deposition of Peter M. Boukouzis |
|---|
| Designation |
| 5:7-9 |
| 7:6-16 |
| 10:20-11:8 |
| 14:11-15:7 |
| 17:22-18:20 |
| 20:3-21:18 |
| 22:15-24:6 |
| 25:11-33:5 |
| 34:24-36:1 |

  **B.** **Deposition Designations, Objections to Designations and Counter-Designations by Defendant.**

*See* ATP's Trial Designations of Deposition Testimony, attached hereto as **Exhibit D2**. *See* ATP's Objections and Reservation of Objections to Trial Designations of Deposition Testimony by Plaintiff, attached hereto as **Exhibit D3**. *See* ATP's Counter-Designations of Deposition Testimony, attached hereto as **Exhibit D4**.

  **9.** **A List By Each Party Of Exhibits To Be Offered In Its Case In Chief.**

  **A.** **Plaintiff's Trial Exhibits.**

Exhibit A hereto contains documents that Bison intends to offer on its case in chief as well as a non-exclusive list of documents that Bison may use for cross-examination, impeachment or rebuttal. Thus, Bison reserves the right to offer at trial additional documents or other materials for cross-examination, impeachment or rebuttal.

  **B.** **Defendant's Trial Exhibits.**

See ATP's Trial Exhibit List, attached hereto as **Exhibit D5**. ATP's Exhibit D5 hereto contains documents that ATP intends to offer on its defense case in chief as well as a non-exclusive list of documents that ATP may use for cross-examination, impeachment or rebuttal. ATP reserves the right to offer at trial additional documents or other materials for cross-examination, impeachment or rebuttal.

See also ATP's Objections and Reservation of Objections to Trial Exhibits Designated by Plaintiff, attached hereto as **Exhibit D6**.

Dated: November 8, 2010
New York, New York

                Respectfully submitted,

                HUNTON & WILLIAMS LLP

                <u>Jeffrey W. Gutchess</u>
                Jeffrey W. Gutchess
                Marty Steinberg
                Patricia Acosta
                Hunton & Williams LLP
                1111 Brickell Avenue
                Miami, Florida, 33139
                (305) 810-2500
                msteinberg@hunton.com
                jgutchess@hunton.com
                pacosta@hunton.com
                *Attorneys for Plaintiff,*
                *Bison Capital Corporation*

January 17, 2011

SO ORDERED:

_____
U.S.D.J.